Good afternoon, Your Honors. Michael Chekian on behalf of Appellant K&S DIVERSIFIED. Your Honors, this is a clear-cut case, we believe, for the application of judicial estoppel. Because here, where we're talking about the implication of two motions, the debtors used each motion for their own self-benefit to pay the claims of the estate. There's no distinction between the first motion we're talking about, the lien motion, where the debtors used a value of $268,000 to avoid liens, and the second motion, which was the claim objection to my client, K&S, where they attempted to use the value, unsuccessfully in the bankruptcy court, of $156,000. That's the one where they were held to be in the lower court as being collaterally estopped. In each... The position, I mean, the BAP has spelled it out, that debtor in possession is different from the debtor, and whatever label appears, it's clear that debtor in possession is arguing for a different point of view. And protecting the whole estate. Well, I... Your Honor, respectfully, I don't see that in the BAP's decision. Because in the BAP's decision, they come right out and say, well, the debtor typically propounds motions to avoid liens, and the debtor in possession slash trustee typically uses... does claim objections. Well, there's no reason or background or authority for that proposition. They just throw it out and suggest that... Well, didn't they actually remand it so everything could be sorted out? That's correct. But I believe that it's an abuse of the discretion of the BAP to even come to that conclusion, because under the facts of this case and the record, it is so clear-cut that all the debtors are attempting to do in each motion is free up equity in order to pay the other liens on the house. This is a bizarre, factual situation. Well, I should say, you know, what bothered the BAP, and I think botherss me, is that how K&S has claimed the moth from $100,000 to, what, $260,000? I mean, have you ever explained that? Well, we have, and we may have to regardless of the outcome of this case, Your Honor, because there's another pending claim objection by another creditor. Do you want to try explaining it now? Yes, sure, Your Honor. This claim was assigned to my client from the original creditor. In the interim between the assignment and my client obtaining it, we made advances to the senior mortgages in order to cure defaults by the debtors, and we also incurred charges such as foreclosure charges. There's another issue which may end up being litigated later at the lower court, which is that of the interest rate, but here we're only talking about the amount of the claim itself and not the interest rate. The interest rate was, what, a 30% interest rate? The interest rate was drafted by the debtors at 30%, which, of course, is not enforceable. What do you mean, it was drafted by the debtors? They wanted to pay it? I have no knowledge of what was on their mind there. It was drafted by the debtors. My client has never intended to enforce it. Our position is that under the California Constitution, the rate should be 0% until due. It was due pre-petition, and at that point, the interest rate is 10%, and that is our position. But at the end of the day, if you have to defend against the other creditor's legitimate objection, when I say legitimate, it's not subject to any doctrine of judicial estoppel, you may get your claim reduced anyway. So why not just get a 506 determination of what the claim is in the real world and be done with it? Because I believe the interest rate, part of it, is really de minimis. I think we're arguing between the debtors' position, which is 7%, and our position, which is that it is 10%. If we get a determination affirming the bankruptcy court's decision that it is X dollars, hopefully that it is $268,000, then we're just arguing about what the interest rate should have been from the time the note was due up until the time it is paid. Either it's 7% or 10%, it's a much smaller issue rather than litigating this whole $112,000 issue. Do you believe that the filing by your predecessor in interest in the prior bankruptcy, the proof of claim in what, $150,000-odd, was incorrect? It may have been. And it was for another time period. It was as of the date of a prior bankruptcy filing. The reason I say that is because if you just take the pure record, without your explanation of advances and payments, it would seem as though one might say, well, this creditor is judicially stopped because his predecessor in interest provided a proof of claim in the prior bankruptcy of X amount. I understand what your answer to that, I think, will be. But sitting back and letting the smoke clear, to me it seems a lot more logical to say, well, let's find out what the true value is and let the chips fall where they may. And that may mean that the homestead exemption may be retroactively reduced, even though I understand they may have given that up in the plan. But what's wrong with just having the bankruptcy court determine in the real world what your secured interest is? Because in this case, Your Honor, so many events have transpired that it would be unworkable. We have a house that has been sold. Right. We have, learning counsel will correct me if I'm wrong, we have a subsequent refinance that has occurred, I believe, in the name of the new owner. And we have the only major creditors that are waiting to get paid pursuant to the outcome of this litigation would be the debtor's son, who has deeds of trust junior to my clients, who coincidentally is the owner of the property now. And there is a small tax lien or two, which I believe is subordinated. And that's it. And the debtors here are not entitled to. Excuse me. No, I'm sorry. I was just going to say, didn't the bankruptcy court say nobody gets paid until we resolve the KNS claim? That's true. But by the time the court said that, I believe that the sale had transpired and the senior mortgages had already been paid off. It's a very strange set of facts. Is there any equity left over for you then? Yes, there is. How much? I believe it's somewhere in the range of $200,000 to $250,000. Counsel can correct me if I'm wrong. That is still being held by escrow. Okay. So you've got $250,000 left, and the question is how much of that do you get? And I don't understand what the mechanical problem is about determining what that value is. You said it's too complicated because other events have occurred, and you can enlighten me. But you've got a pot of money, and the only question is how much of that money are you entitled to? But my point is why should we ignore the United States Supreme Court, the Ninth Circuit, the law of judicial estoppel? Well, because it's a discretionary doctrine, and if it were a mandatory doctrine, that might be something else. But the BAP took a look at it and said, well, the bankruptcy court failed to consider the equitable factors for remanding, and lost in all this is a determination of what the real value is. I can understand why you filed it and understand why the bankruptcy court was upset because it predicated prior ruling on the valid proof of claim. I understand that completely. But that's one issue left in the case. Why not just you feel confident in your value. If you're right, you get it. Because I think the remand will engender much more litigation. Why? Because the BAP has suggested conversion to Chapter 7. The BAP has suggested undoing the sale. The BAP has suggested appointing a Chapter 11 trustee. The BAP has suggested things that will not be in the best interest of any creditor, let alone my client, because it will delay the distribution of the remaining money that's held in escrow. The affirmation of the lower bankruptcy court, on the other hand, will provide for a prompt determination that the amount of the claim is 268. The debtors have already benefited by arguing that in their lien avoidance motion and getting rid of the loop chain abstracted judgment. And the debtors have to pay back the rest of the money anyway because they're not entitled to a Chapter 11 discharge. They had a prior Chapter 7 within seven years of this filing. So I believe that, equitably, affirmation of the lower court would be proper. And there's a jurisdictional challenge as well, but I see I'm out of time. I can address that if the court... I think we understand now. Okay. Thank you. I'm Rebecca Parker, and I'm appearing for the Debtor in Possession. I have a little bit better understanding, I think, of the practicalities of the situation, and that's what I'll address since the court appears to be more interested in that than the legal arguments, which I think all paths, no matter which way you do it, lead to remand and for the court to determine what the amount of this claim is. The State has never had its day in court as in to determine this claim. The original claim filed in the Chapter, originally Chapter 13 proceeding, was filed without backup documentation. It was just a claim form without showing how they came to the numbers that they came to. What do you claim you owe? What are the claims we owe? Yeah. What do you contend that you owe? I think the amount is the amount of the earlier claim for a number of reasons, and that is because there are problems with their advances clause. Just a second. You admit that you owe $151,000.  They're claiming $250,000, $260,000. Correct. You don't think their advance clause is effective to add on to the note and have various other defenses, I take it? Correct. You've got a pot of money there that you want to get paid, and the next junior lien-hold creditor is the son, right? Which is an irrelevant fact. Except for the fact that maybe you ought to just settle this thing today. Well, we tried. And, in fact, just to update the court on everything that's happened, we have released $100,000. So what happened was that the house was sold, the first and second were paid. There was, in fact, $440,000 sitting in the escrow. And then KS is the next one in line to be paid. And the question is, does KS get $257,000 versus $100,000? That's a big money difference there. That question has never been presented to any fact finder as to what their actual claim is. And we believe, the estate believes, there are several arguments that reduce the amount of that claim. And why is that important? Because the legitimate third and fourth behind this lien, there's never been any question as to their validity. In fact, what happened was the debtor's son bought them at face value from the people that held them so that he could help his parents. He holds those liens. Nobody's ever questioned them. It's prejudicial that it's the son. Well, it's prejudicial in one sense, and only in the other sense it affords an opportunity for settlement. Correct. And it has afforded a great many opportunities in this case. For instance, the debtor's son has pledged his note to pay the attorney's fees in this case. The debtors have also pledged their homestead exemption to pay the attorney's fees and the other claims in this case. Why is that important to them? Because they're going to owe the money for the attorney's fees and the claims in this case if they don't get paid out of this corpus. So they want it to be paid from this so that they're not going to have to worry about those bills later on. After the third and fourth, then we have the leftover unsecured claim of Luke Chang that was avoided. It's still down there as an unsecured claim. We have state taxes and federal taxes also. So even though that claim was avoided, that's still a subordinated unsecured creditor that has to be paid if there's money left over. The only amount that the debtors are going to get in this case, the top amount that the debtors could ever get in this case is their $75,000 homestead exemption. Whether or not the original attorney who did the avoidance motion had said that the amount of KS's claim was $100,000 or $250,000 didn't make a difference because under the law, the debtor is only entitled to a maximum of $75,000 homestead exemption anyway. So any escrow company looking at the order, avoiding the lien, knows that they can't release more than $75,000 to the debtor for a homestead exemption anyway. You can understand why the bankruptcy judge was upset by this because your clients represented X amount and then two days later represented Y amount, both for litigation advantage. There's no doubt about it. I do. I know exactly what happened. He had on his desk at the same time two pleadings written by the same attorney, one saying that the value of the lien is $100,000 because that's a claim that they filed earlier, and another one saying the value of the lien is really, I'm sorry, the value of the claim is really $250,000 something because that's their filed claim in this case. One says judicial. That's right. That's right. And he said this doesn't seem right. But what he should have done is probably taken a step back and said, well, wait a minute, wait a minute. Here is the debtor arguing on behalf of themselves, which happens in every individual Chapter 11 case that I've ever done. We make the motion at the very beginning of the case to avoid the liens based on the claim that's filed by the creditor. That's all the information you have at the time. But then in this case, you have this previous case situation where after the attorney looks into it and realizes that we also have an arguable claim that they are actually owed less than what they say, I also have a duty to object on behalf of the estate to reduce that claim. What would I have done if I had actually been the attorney that did that? I probably would have put a footnote indicating, look, we have this other thing pending. It may reduce the amount of the claim. But in any extent, it's not going to be more than $75,000, which is the amount of the homestead exemption allowed under the law. So that's the practicalities of the situation. I thought you would have alerted the court to it or say perhaps the court wants to make a determination of secured interest under 506 or the claim, and not so, depending on the extent it was unsecured as well. Well, you think it's a fair disposition. It has to be remanded and let Judge Ryan determine the amount of the claim. And I think actually Judge Ryan has already determined that that's what he wants to do because when Luke Chang's attorney brought a subsequent objection to the claim based on his rights as a lower secured creditor, the judge said let's just wait, let's see what the appellate court decides because I have a feeling this is going to be in front of me again anyway, and we can decide it all at the same time and we can consolidate them. So we have one decision as to what the amount of the claim is. It's a fair one based on state law on the security instruments. So that I think is the right result so that we don't have another one pending where we have an appeal pending here. All right. Maybe the circuit mediator could be of assistance to you. Well, we tried that. If you're talking about money, we're at the end. I know you have, but there's a risk to all of you in how this turns out. That's right. You're not assured of getting a reduction when you go back to bankruptcy court. They're not assured of getting 100% on the dollar. And then you'll have your remedies on appeal again, and it could be here next year. That's right. And that was based on those considerations why we released the $100,000 because the estate released $100,000 of the amount during the pendency of this appeal because the thought was interest is going to be accumulating. At least the majority of the amount that's the original part of the principal has been released so that given that our anticipation is that the result will probably be that the claim is somewhere between 100 and 250, closer to the 100, that it'll stop the interest running at least for that portion of the debt. And that's why we've done that. But it does make a big difference in the payment of claims, the claims underneath. So what are your differences? You differ on interest rate. You differ on the amount of advancements they're entitled to. What else? Anything else? Yes, there's also an argument made by the other creditor that actually was not made below but which was made by the secured creditor underneath that their claim is void altogether. And there's also arguments that the debtor paid some of that during the time when there's a bunch of arguments there. And I have no idea which ones the courts are going to pick to decide exactly what the amount of the claim is. But my... Well, any effective settlement would have to involve the creditor as well. Right. And I just think KS wants its windfall. I mean, it really did get a windfall when this was decided. And it was a clever argument made by counsel of the judicial estoppel argument, which if I was on the other side, I would have been very proud of coming up with myself because, you know, faced with having to fight about what's in my note and what isn't in my note versus this judicial estoppel argument that sort of makes sense on the day when the judge is upset about it because he sees two things right in front of him that are inconsistent. But when you think about the estate of the whole, the result really should be that let's really figure out what's owed to this creditor instead of becoming upset because there's inconsistent positions when they're not necessarily inconsistent considering the capacities that people were acting in. Let's assume that the bankruptcy judge decided the value of the claim was $150,000. What does that do to your homestead exemption?  Right. And then that amount is then available for counsel to pay their bill, which means that there's more freed up on the back end to pay the underlying creditors. So it would mean that the son would probably get the rest of it. Yeah. So you basically don't think the homestead exemption, the determination, the prior case would be affected by this at all? Well, it may. I could see the judge saying that the penalty for what the prior counsel did in the name of the debtor, not mentioning the fact that there was also this objection that was going to be pending in four days, would be that we're going to hold you to the original $40,000 that would have been the amount of your homestead exemption if you believe the amount of the claim that you said. I see. That's a possible penalty that could be imposed. That's a potential risk. Exactly. And, you know, I don't know if that will be a fair result or not, given that I think the decision in this case was entirely made by counsel in the timing of everything and what was said. I don't think the debtors really understand the implications of everything here. So that's about it. If anybody else has any questions. How long have you been practicing bankruptcy law? My whole practice. I have been. I started out at the law firm of Solmeyer, Kupitz, Baumann and Rothman.  Solmeyer, Kupitz, Baumann and Rothman, an old bankruptcy firm that's been around for above 45 years, I think. And then I went out on my own after that. And I've always practiced bankruptcy law, mainly debtor practice. And I represent some trustees where they need somebody who has a debtor's perspective in going after debtors that are particularly heinous. So I take those on contingency from some trustees. But that is what I do. And mostly chapter. UCLA Law School. What high school did you go to? I went to Villa Park High School in Orange, California. Where? Villa Park, which is in Orange. It's in the Orange Unified School District, which is in Orange County. No, I was just thinking, sitting here, you've got to be a good bankruptcy judge. Next time there's a vacancy, why don't you apply? You know, maybe someday I will. I love working for myself because I have a five-year-old. And I am able to do my schedule the way I like that way. Maybe when he's a little bit older. I worked for a lawyer four months of my life, and I hated every minute of it. I went out on my own. That's the way they used to do it at Berkeley. Thank you. Why can't you settle this case? Let them stand up and talk. Go outside and talk. We have tried. Counselor and I have tried and will, I'm sure, continue to try. The only reason that the circuit mediator might be of assistance is that what the circuit mediator can do is bring in the third-party creditor. And you need a global settlement, don't you? You can't settle with that. But it's just hopeless. And I know you've been sincere in trying. It's hopeless. That's fine. The only reason I raise that is, depending on how the panel goes, this could end today or it could end many, many months or years from now. It could end when the child's eight years old. Let's hope not. We did go to the circuit mediator, by the way, unsuccessfully, of course. I would just like to point out that I understand that it was No, when at first you don't succeed, try and try again. Yes, Your Honor. I just wanted to point out as a last point that even though it was inadvertent, if the debtors had not argued in the lien avoidance motion that the amount of the K&S claim was approximately $268,000, then that would have resulted in only a partial avoidance of the loot chain. I understand why the Bankruptcy Court was upset about it. And it just appears to me on the papers that they may, if they prevailed on that, with your value, reducing your value, then they may have received a bit of a windfall. And there may or may not be a remedy for that. I don't know. But I understand the point. And towards that end, I do believe that all the prongs, all the required prongs of the New Hampshire Supreme Court case that we cited in our brief have been met. Is K&S, is that a small corporation? Yes. Yes. And one other issue, perhaps I can talk with counsel about it later. I won't bother. Why don't you do that? Aren't the interest rates calculated based on, oh, we have a provision that it's the treasury rate plus 1% or something like that? Yes, that is in the California Constitution, which we're calculating as our... How do you get up to 10%? Right now, I can't tell you exactly. That issue wasn't briefed. You didn't think you'd have to explain the mechanics of it today, but we'd like to get under the hood a bit, I guess. Right. No, we understand the legal argument, too, and that's it. Have you ever heard of equity funding reorganization? No, I haven't. Have you ever heard of it? It's one of my most famous cases. I'll have to look that up. It was the biggest Chapter 10 in history up until that time. That's a Roman 10. That's pre-1978. Yeah, pre-1978. And that case, when it was over with, gave the bankruptcy practice great respectability, because I awarded something like, oh, when the dollar was worth a dollar, oh, somewhere, $12, $13 million in fees, and then every law firm in town decided to get in the bankruptcy practice. That's right. You know? Well, keep that in mind. I paid Warren Christopher $60 an hour. That gave him a million dollar bonus. No more than that, I think it was $2 million. They're all back out of the practice now. What? They're all leaving now, the practice of bankruptcy. You should have hung around for the salad days in 78, and they thought bankruptcy courts had the power to do everything. What was that? 78, about 78 to 84, glory days of bankruptcy. Well, I was out of it then. I'll look that up. There's a whole write-up in Fed Sup. It took me six weeks to do it. It gives you the whole plan of how you can save the world. See, because not one person lost a dime, and there wasn't one dime in that state that was honestly acquired. If you held on to it until, oh, two years ago, you'd been very rich because we didn't kill it. We reorganized it. I think it was earning something like 14% a year in profits compounded. What was this? What? What was earning the interest? The new company called Orion Capital Corporation. If I go look that up, you'll be quizzed on it next time. I'll be back on Monday. Oh, God. Well, the only thing I got out of that was a bank in Texas. Sent me a nice note thanking me for my efforts and having them get back their whatever it was, $10,000,000. And I kept that in case I ever need a loan at that bank.
judges: Pregerson, Noonan, Thomas